IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RONALD ALLEN and JUSTIN EZRA JONES, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:18-cv-0033 ) Judge Aleta A. Trauger |
| BILL HOLT, | ) ) |
| Defendant. | ) |

**MEMORANDUM**

The plaintiffs, Ronald Allen and Justin Ezra Jones, proceeding *pro se*, have filed a civil Complaint under 28 U.S.C. §1983 against defendant Bill Holt. (ECF No. 1.) Before the court are the plaintiffs' applications to proceed *in forma pauperis* (ECF Nos. 2, 3.) In addition, their complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

**I. Application to Proceed as a Pauper**

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because the plaintiffs properly submitted their *in forma pauperis* applications, and because it appears from their submissions that the plaintiffs lack sufficient financial resources from which to pay the full filing fee in advance, their applications (ECF Nos. 2, 3) will be granted.

However, under § 1915(b), the plaintiffs nonetheless remain responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and

to pay the remainder in installments. Accordingly, the plaintiffs will be assessed $175 each, which represents each plaintiff's proportional share of the full $350 filing fee, to be paid as directed in the accompanying order.

## II. Dismissal of the Complaint

Pursuant to 28 U.S.C. § 1915(e)(2), the court is required to conduct an initial review of any complaint filed *in forma pauperis* and to dismiss the complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. *Begola v. Brown*, 172 F.3d 47 (Table), 1998 WL 894722, at *1 (6th Cir. Dec. 14, 1998) (citing *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). The court must construe a *pro se* plaintiff's complaint liberally, *Boag v. McDaniel*, 454 U.S. 364, 365 (1982), and accept the plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

### A. Factual Allegations

In their Complaint, the plaintiffs allege that about once per week or once every two weeks a chaplain or preacher will come into the pod where they are housed to perform a church service. (ECF No. 1 at Page ID# 5.) During the service the television is on and the volume is very loud. (*Id.*) Additionally, other inmates are allowed to be out of their cells, and they are loud and disrespectful to the "very few people trying to worship in the middle of the pod." (*Id.*) The plaintiffs contend that "this is no way what I consider having church." (*Id.*)[1]

The plaintiffs allege that, since they arrived at the Robertson County Jail on October 7, 2017, they "have not had any outside rec[reation]." (*Id.*)

---

[1] Although the pronoun "I" is used throughout the complaint, the court will assume the plaintiffs intended to use the pronoun "we."

Finally, the plaintiffs allege that they "have not been able to access a law library and the staff keeps telling me the problem is being looked into." (*Id.*) At least one plaintiff has a "serious case pending and no way to try and help fight my case."

The plaintiffs allege claims for violation of their right to exercise their religion, failure to provide outdoor recreation, and violation of their right to access the courts. As relief, the plaintiffs seek a transfer and monetary damages.

**B. Standard of Review**

If an action is filed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as construed by *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that "the dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under [§ 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)"). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some

factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks and citation omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The court is not required to create a claim for the plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir. 1975); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her").

### C. Discussion

#### 1. Religious Practices

The plaintiffs allege that, when they attend religious services in their housing pod, the television is on with the volume turned up and other inmates, who are not attending the service, are out of their cells talking loudly and being "disrespectful." (ECF No. 1 at Page ID# 5.)

While "incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain First Amendment protection to freely exercise their religion, *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987), subject to reasonable restrictions and limitations related to legitimate penological interests. *Id.* at 350-53; accord *Turner v. Safley*, 482

U.S. 78, 89 (1987). First Amendment protection extends to all religious beliefs, and guaranties "religious liberty and equality to the infidel, the atheist, or the adherent of a non-Christian faith ..."). *County of Allegheny v. ACLU*, 492 U.S. 573, 615 (1989).

To state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). Likewise, RLUIPA[2] provides, in pertinent part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden . . ." furthers "a compelling governmental interest" and is done so by the least restrictive means. 42 U.S.C. § 2000cc-1(a) (1)-(2). RLUIPA's institutionalized-persons provision alleviates exceptional government-created burdens on private religious exercise. *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005).

Although RLUIPA does not define "substantial burden", courts apply the traditional substantial burden test, as defined by the Supreme Court's free exercise jurisprudence. *Episcopal Student Found. v. City of Ann Arbor*, 341 F.Supp.2d 691, 701 (E.D.Mich. 2004) (citations omitted). A "substantial burden" requires something more than an incidental effect on religious exercise. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988) (a substantial burden has "a tendency to coerce individuals into acting contrary to their religious beliefs"); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 141 (1987) (there is a substantial burden where a regulation puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs"); *Midrash Sephardi, Inc. v. Town of Surfs*ide, 366 F.3d 1214, 1226-27 (11th Cir. 2004) (a substantial burden must place more than an

---

[2] RLUIPA stands for the Religious Land Use and Institutionalized Persons Act, codified at 42 U.s.C. § 2000cc *et seq*.

inconvenience on religious exercise); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (substantial burden is "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable").

The plaintiffs fail to allege facts demonstrating that worshipping in isolation and silence is a central religious belief or practice. Likewise, the plaintiffs do not allege that the inconvenience of attending religious services in their housing pod, where the television is playing and other inmates are talking, places a substantial burden on their ability to practice their religion. Although plaintiffs may prefer to have a silent, dedicated space in which to practice their faith, the facts that they have alleged fail to show or support a reasonable inference that noise from the television and other inmates imposes a substantial burden on their ability to freely exercise their religion. Consequently, the plaintiffs have failed to state a claim for violation of their right to exercise their religion.

2. Recreation

The plaintiffs allege that they have not had any outside recreation since arriving at the jail in October, 2017. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous"; nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting Rhodes, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions

intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Although "[t]he Sixth Circuit, applying Supreme Court precedent, has recognized that outdoor recreation, in some undefined form and amount, is necessary for inmates' well-being," *Jones v. Stine*, 843 F.Supp. 1186, 1193 (W.D.Mich. 1994) (citing *Walker v. Mintzes*, 771 F.2d 920, 927–28 (6th Cir.1985)), there is no applicable precedent requiring any minimum amount of outdoor recreation for prisoners. *See Argue v. Hofmeyer*, 80 Fed.Appx. 427, 430 (6th Cir.2003) (observing that the Sixth Circuit has never set a minimum amount of outdoor time for inmates). The Sixth Circuit has held simply that "'a total or near-total deprivation of exercise or recreational opportunity, without penological justification,'" impinges on an inmate's Eighth Amendment right, because "'[i]nmates require regular exercise to maintain reasonably good physical and psychological health.'" *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir.1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir.1983)).

Despite the Robertson County Jail entering into an agreement with the United States Marshal establishing an outdoor recreation plan for inmates, the plaintiffs allege that they have not been given any outdoor recreation time since arriving at the Robertson County Jail in

7

October, 2017. As such, at this juncture, the plaintiffs have sufficiently stated an Eighth Amendment claim against defendant Holt.

3. Access to the Courts

The plaintiffs allege that they have not been able to access a law library and that one or both of them have "a serious case pending and no way to try and help fight my case." (ECF No. 1 at Page ID# 5.) It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that, in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (Lewis changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing Lewis, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id*. at 416.

The plaintiffs' allegations are insufficient to state a claim for violation of their right to access the courts. While plaintiffs allege that they have a "serious case" that they are unable to pursue because they lack access to a law library, they do not describe the alleged case. As such, there is no way for the court to determine whether the case is nonfrivolous and of the type recognized by the Supreme Court as sufficient to support "actual injury." In the absence of this necessary information, the plaintiffs' allegations are insufficient to state a claim upon which relief can be granted.

## III. CONCLUSION

For the reasons set forth herein, the plaintiffs have sufficiently stated a claim for violation of their Eighth Amendment rights against Defendant Holt. The remaining claims will be dismissed for failure to state a claim upon which relief can be granted. The case will be referred to the Magistrate Judge for further proceedings as described in the accompanying order.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE