# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **RONALD ALLEN and** | ) | |
| **JUSTIN EZRA JONES,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 3:18-cv-00033** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **BILL HOLT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is defendant Bill Holt's Objection (Doc. No. 48) to the magistrate judge's Report and Recommendation ("R&R") (Doc. No. 44), recommending that the defendant's Motion for Summary Judgment (Doc. No. 18) be granted in part and denied in part. Specifically, the magistrate judge recommends that summary judgment be granted in favor of the defendant as to one plaintiff's remaining claim and denied as to the other plaintiff's. The defendant objects only to the recommendation that his Motion for Summary Judgment be denied as to the claim asserted by plaintiff Justin Jones.

For the reasons discussed herein, the court will overrule the defendant's Objection and accept the magistrate judge's recommendations in their entirety.

## I.     Standard of Review

The Federal Magistrates Act of 1968 authorizes the district courts to "designate a magistrate judge to hear and determine any pretrial matter pending before the court," except for those matters deemed "dispositive." 28 U.S.C. § 636(b)(1)(A). A magistrate judge may be designated to hear and consider dispositive motions, but, with respect to such motions, the

magistrate judge must submit to the district court proposed findings of fact and recommendations for the disposition of the motion by the district judge. 28 U.S.C. § 636(b)(1)(B).

When an objection is lodged against a magistrate judge's report and recommendation on a dispositive matter, the district court applies a *de novo* standard of review to any portion of the R&R to which the moving party objects. In conducting this review, courts reexamine the relevant evidence previously reviewed by the magistrate judge to determine whether the recommendation should be "accept[ed], reject[ed], or modif[ied], in whole or in part[.]" 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

## II.    Procedural History

Ronald Allen, Jr. and Justin Ezra Jones filed this *pro se* and *in forma pauperis* lawsuit on January 9, 2018, against Bill Holt ("Holt"), the Sheriff of Robertson County, Tennessee, in his official capacity only. (Compl., Doc. No. 1.) At that time, both of the plaintiffs were confined as pretrial detainees at the Robertson County Detention Center ("Detention Center"). Jones remains confined at the Detention Center, but Allen was transferred to the custody of the Tennessee Department of Correction on June 4, 2018. (Crawford Dec., Doc. No. 2 ¶¶ 3–4.)

The plaintiffs seek injunctive and monetary relief under 42 U.S.C. § 1983 for violations of their civil rights alleged to have occurred during their confinement at the Detention Center. The court dismissed all but one of their claims upon conducting an initial review of the Complaint under 28 U.S.C. § 1915(e)(2). (See Apr. 5, 2018 Memo. & Order, Doc. Nos. 5, 6.) The sole remaining claim following the initial review is a claim that the defendant violated the plaintiffs' constitutional rights by depriving them of the opportunity for outdoor recreation and exercise. The Complaint alleges that the plaintiffs have had "no outdoor recreational time at all, no fresh air" since being incarcerated at the Detention Center on October 7, 2017. (Compl. at 5.)

The defendant filed an Answer denying the allegations of constitutional wrongdoing. (Doc. No. 14.)

Following a period of discovery, the defendant filed the present motion, arguing that the undisputed evidence shows that the plaintiffs' constitutional rights regarding access to outdoor recreation have not been violated. Plaintiff Allen, despite being granted an extension of the deadline and being warned of the possible consequences of failing to respond, has never filed a response in opposition to the motion. The magistrate judge, after carefully reviewing the defendant's motion and evidence in support thereof, recommends that summary judgment be entered in favor of Holt as to Allen's claims against him. Allen has not filed objections to the R&R, and Holt does not object to that portion of the R&R. Plaintiff Jones, however, did respond to the defendant's motion and presented evidence in support of his opposition. The magistrate judge found that material factual disputes preclude summary judgment in favor of the defendant as to Jones' claim.

Holt raises two specific objections: (1) that the magistrate judge "incorrectly disregarded the five times the Plaintiff refused outdoor recreation based on his admitted inability to participate" (Doc. No. 48, at 1); and (2) the magistrate judge erred in "considering inadmissible medical opinion testimony from the Plaintiff regarding alleged injuries caused by alleged lack of outdoor recreation" (*id.* at 4). Jones filed a Response to the defendant's Objections (Doc. No. 51).

**III.    Analysis**

  **A.  Denial of Access to Outdoor Recreation**

The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment. The Due Process Clause of the Fourteenth Amendment provides "at least" the same

protections to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Further, "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535. Thus, when a court is evaluating the constitutionality of conditions of pretrial confinement that implicate detainees' right not to be deprived of liberty without due process, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Id.* "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. Conversely, if a restriction appears to be "arbitrary or purposeless," the court may infer that the action is unconstitutional punishment. *Id.*

While the Sixth Circuit has acknowledged that "there is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does," it has nonetheless "historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). But even under the Eighth Amendment, the Sixth Circuit has provided little guidance regarding the extent to which inmates have a constitutional right to outdoor exercise or exercise at all.[1]

The Sixth Circuit's first significant pronouncement on the topic dates back to 1983. In *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir. 1983), the court considered a convicted prisoner's claim that his Eighth Amendment right to be free from cruel and unusual punishment had been abrogated by the prison officials' "denial, without penological justification, of out-of-cell

---

[1] Courts have generally recognized that "there is a significant difference between a lack of outdoor recreation and an inability to exercise." *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015). The court here treats the plaintiff's claim as one based on lack of the opportunity to exercise.

exercise during his 46-day tenure" at the state prison. *Id.* at 289. The Sixth Circuit found that the defendant was not entitled to summary judgment, because a material factual dispute existed as to whether the plaintiff was permitted exercise during that period, thus suggesting that a 46-day deprivation of the right to exercise could constitute a constitutional violation. In denying summary judgment, it noted that it was "generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees. Inmates require regular exercise to maintain reasonably good physical and psychological health." *Id.* (collecting cases from the Fourth, Fifth, Eighth, and Ninth Circuits). It also recognized that adjudication of the claim might "necessitate development of additional facts not incorporated into the record," including, but not limited to, "the size of the cell, opportunity for contact with other inmates, time per day expended outside the cell, justifications for denial of the right to exercise, physical or psychological injuries resulting from a lack of exercise or a particularized need for exercise." *Id.*

Since *Patterson*, neither the Supreme Court nor the Sixth Circuit has "set a minimum amount of time a prisoner must have access to outdoor recreation." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). In *Wilson v. Seiter*, 501 U.S. 294, 304 (1991), the Supreme Court identified exercise as a basic need on par with the needs for food and warmth, but it also implicitly accepted that the amount of exercise constitutionally required varies depending on context. Thus, the Court cited approvingly both *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979), and *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980). In *Spain*, the Ninth Circuit declined to "decide whether deprivation of outdoor exercise is a per se violation of the eighth amendment" but nonetheless upheld the district court's order requiring the defendants to accord prisoners otherwise confined in small cells almost 24 hours per day at least one hour of outdoor

exercise per day, five days a week, weather permitting. In *Clay*, the Fourth Circuit held that outdoor exercise was not required when prisoners otherwise had access to a dayroom eighteen hours per day, in which they engaged in "walking, running in place, sit-ups and other individual exercises." *Clay*, 626 F.2d at 347. Consistent with the fact-bound nature of those decisions, the Sixth Circuit has held that "[t]he determination of when restricted exercise rises to the level of constitutional magnitude depends upon the facts of each case, including the reasons and length of time the restrictions are imposed." *Riddle v. Jones*, 917 F.2d 1305 (Table), 1990 WL 145574, at *1 (6th Cir. 1990) (citations omitted) (holding that the plaintiff stated a colorable claim under the Eighth Amendment where he alleged that "his exercise was limited to 30 minutes per day indoors in full restraints"); *see also Argue*, 80 F. App'x at 30 (holding that an inmate who was restricted to his cell for twenty-three hours a day after refusing a program classification and had to choose between showering and exercising during his one hour outside his room did not state an Eighth Amendment claim); *Butler v. Jewell*, 869 F.2d 1488 (Table), 1989 WL 16851, at *2 (6th Cir. Feb. 17, 1989) (holding that one hour of weekly recreation in a gymnasium in addition to daily out-of-cell activity "satisfied [a convicted prisoner's] right to regular access to recreation"); *Eaddy v. Foltz*, 782 F.2d 1041 (Table), 1985 WL 14065 (6th Cir. 1985) (holding that a plaintiff in administrative segregation who alleged only three hours of outdoor exercise per week failed to state a claim under the Eighth Amendment). This court gleans from the cited cases that the opportunity for some amount of "regular" exercise is required, that being deprived of the opportunity to exercise for forty-six days in a row may not meet that requirement, but that daily exercise is not constitutionally mandated. Being required to exercise in "full restraints," depending on the other circumstances, may or may not constitute a constitutional violation.

In this case, the defendant moves for summary judgment on Jones' claim based on the lack of access to outdoor recreation and exercise generally, arguing that the plaintiff has access to many hours outside of his cell each day and that the defendant's logs show that the plaintiff "refused" offers of outdoor recreation on five dates between March 2, 2018 and September 20, 2018, and finally accepted the offer on October 17, 2018. In support of his motion, the defendant relies on the Declaration of Anthony Crawford, Jail Administrator at the Detention Center (Doc. No. 20), and exhibits attached thereto. The evidence provided by Crawford is summarized in the defendant's Concise Statement of Facts as to Which He Contends There Is No Genuine Issue for Trial. (Doc. No. 21.)

According to Crawford's Declaration, the Detention Center has "two outdoor recreation areas that can be used by inmates and detainees as weather and staffing levels allow." (Doc. No. 20 ¶ 5.) Given their numerous other duties, there are days when the Detention Center is unable to provide inmates with access to outdoor recreation, but, Crawford maintains, it makes "every possible effort to give its inmates access to the outdoor recreation areas . . . on a rotating basis." (*Id.*) Inmates who partake of the opportunity for outdoor recreation sign a written log showing that they did so. (*Id.* ¶ 6.) According to the log attached to Crawford's Declaration, Jones, who has been detained at the Detention Center since October 8, 2017 (*id.* ¶ 4), "accepted outdoor recreation time on October 17, 2018," but "refused the offer of outdoor recreation" on March 2, 2018, June 28, 2018, August 23, 2018, September 5, 2018, and September 20, 2018." (*Id.* ¶ 7.) Crawford also states that inmates at the Detention Center are provided with at least one hour and up to fourteen hours outside of their cells each day, if they are not in "restricted housing." (*Id.* ¶ 8.) He states that inmates have access to a "dayroom/recreation area" in each pod or housing

unit, in which the inmates are "allowed to walk; run in place, do push-ups, do sit-ups, or other exercise." (*Id.* ¶ 9.)

In response to this evidence, Jones filed a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, which is "sworn to be true and correct under penalty of perjury, 28 U.S.C. § 1746" (Doc. No. 27, at 6); his own Affidavit, likewise sworn (*id.* at 8–11); the Affidavits of six other inmates (*id.* at 12–17); and a sworn Objection and Response to Defendant's Concise Statement of Facts (Doc. No. 26). According to the evidence submitted by the plaintiff, he received knee surgery in February 2018 and was on crutches and wore a leg brace for some period of time. The brace "was of a type that is secured from mid-thigh to the ankle." (Doc. No. 27, at 8.) The plaintiff states that, apparently pursuant to Detention Center policy, "[w]hile on outside 'rec' shackles always remain on." (Doc. No. 26, at 1.) He complains that the leg brace was of the type that made it physically impossible for him also to wear the shackles. (Doc. No. 27, at 8.) He was still on crutches and the leg brace when, on March 2, 2018, almost five months after his arrest, he was offered his first opportunity for outside recreation. He states that "he could not do shackles and crutches" (Doc. No. 26, at 1) and thus was unable to accept the offer to take outdoor recreation. Similarly, in his summary judgment filings, he claims that, because he was still wearing a knee brace on the other dates referenced by the defendant (June 28, August 23, September 5, and September 20, 2018), he "could not accept the mandatory 'shackles on' practice," and, as a result, he "was refused outside recreation" on those dates. (Doc. No. 27, at 8). He was "finally able to maneuver without the reconstructive leg brace" by October 2018 and was allowed outside recreation "for the 1st time in a calendar year." (*Id.* at 9.)[2] During

---

[2] In his Response to the defendant's Objection, Jones somewhat undercuts his own argument by conceding, now, that he actually only wore the brace for two months following his surgery. He nonetheless maintains that the pain from his knee surgery made it particularly

his brief period outside, he and the other inmates were allowed to remove their handcuffs but not the shackles. (*Id.*) He complains that, even then, the shackles-on policy makes it impossible actually to exercise while on outdoor recreation. (Doc. No. 26, at 1.) He maintains that, although the Detention Center was built with two outdoor secure recreation areas, "no regular or meaningful outside recreation schedule is posted or followed." (*Id.* at 2.) He also disputes the defendant's suggestion that the inmates have the opportunity to exercise in the day room. Jones attests that the housing pod dayroom is so busy and crowded that it is "virtually impossible" and even dangerous to exercise there. (*Id.*)

The affidavits from other inmates submitted by the plaintiff support his contentions. Carl Prince's Affidavit states that he has not been offered outdoor recreation once during the two months of his detention and that the "cell block day room is a hostile environment," where it is impossible to exercise and there is no access to natural light. (Doc. No. 27, at 12.) Another inmate who has been incarcerated for ten months has been allowed outside five or six times but has been shackled each time. (*Id.* at 13.) He also attests that there are no windows "on the Pod." (*Id.*) The other inmates who submitted Affidavits consistently attest that there are no windows in the Pod, that outdoor recreation opportunities are few and brief when they do occur, and that inmates remain shackled while outdoors, making exercise nearly impossible.

The defendant argues that the magistrate judge erred in finding a material factual dispute as to whether the plaintiff was denied outdoor recreation, because the magistrate judge ignored the fact that the plaintiff admitted that he was "unable to participate in outdoor recreation when offered for several months," due to his knee injury, and "incorrectly disregarded the five times after the Plaintiff's February 2018 knee surgery that the Defendant offered the Plaintiff outdoor

---

painful to wear shackles and that the Detention Center staff would not allow him to participate in outdoor recreation without shackles. (Doc. No. 51, at 1.)

recreation, but he refused it because . . . by his own admission, [he] could not participate." (Doc. No. 48, at 2.) The defendant insists that it is undisputed on the record that the jail staff offered the plaintiff outdoor recreation five times between March 2, 2018 and September 20, 2018 and that the plaintiff refused each offer because he could not participate while wearing leg restraints. He contends that the magistrate judge's analysis "treated all five offers of outdoor recreation as though they had never been made at all." (Doc. No. 48, at 3.) The defendant also argues that it is not an unconstitutional policy to require inmates to remain shackled while on outdoor recreation, citing *Morgan v. Rowland*, No. 3:01CV1107(CFD), 2006 WL 695813 (D. Conn. Mar. 17, 2006), as holding that "requiring inmates to attend recreation wearing handcuffs and shackles did not violate the Eighth Amendment." (Doc. No. 48, at 3.) Because the County's policy is not unconstitutional, he argues, the plaintiff's inability or unwillingness to exercise in leg restraints does not serve as the basis for a claim based on an outright denial of the opportunity for outdoor recreation. That is, he argues, the court "must take into consideration the fact that the Defendant made outdoor recreation available to the Plaintiff on five different occasions," each of which he refused. The defendant insists that the "one time [the plaintiff] accepted an offer of outdoor recreation once he was out of his knee brace, when combined with his daily opportunity to exercise indoors outside his cell," demonstrates that there was no "total or near-total deprivation of exercise or recreational opportunity, without penological justification." (Doc. No. 48, at 4 (quoting *Patterson*, 717 F.2d at 289).)

The court finds that the magistrate judge did not err and that material factual disputes preclude summary judgment in favor of the defendant on this issue. The defendant's own evidence shows that Jones was not offered outdoor recreation at all until he had been incarcerated almost five months—well over the 46 days the Sixth Circuit considered potentially

excessive in Patterson. And, although the defendant argues that Jones "refused" outdoor recreation the first five times it was offered to him (over the course of a year), Jones offered evidence that he was effectively refused outdoor recreation because he could not wear shackles without pain due to his knee injury. (*Id.*)

The defendant suggests only that access to outdoor activity is limited by staffing needs and, therefore, that it is not punitive. However, "'[t]he cost or inconvenience of providing adequate facilities is not a defense' to the imposition of punishment in violation of the Fourteenth Amendment." *Shorter v. Baca*, 895 F.3d 1176, 1186 (9th Cir. 2018) (quoting *Spain*, 600 F.2d at 200). Moreover, while there may be circumstances in which requiring pretrial detainees to remain shackled during their "exercise" time is warranted, the defendant here has made no effort to justify or even explain the practice of requiring inmates allowed access to a secured outdoor exercise area to remain shackled or why that requirement could not be modified for a detainee who had recently undergone knee surgery.[3] In the absence of any justification reasonably related to "a legitimate government objective," the practice appears to be purely punitive. *Woflish*, 441 U.S. at 539.

---

[3] In the case cited by the defendant in support of the practice, the inmate plaintiff had been transferred to an administrative segregation program at a high-security prison after being convicted of assaulting his cellmate at a previous institution by throwing hot water and baby oil onto the inmate's face, cutting his face with a razor, and striking him in the head by swinging a sock containing an electrical adaptor. *Morgan v. Rowland*, No. 3:01CV1107(CFD), 2006 WL 695813, at *2 (D. Conn. Mar. 17, 2006). During the most restrictive "Phase I" portion of the program to which he was transferred, where inmates remained for a minimum of six months and until they stayed "disciplinary-report free" for a certain period of time, inmates received "voluntary recreation for one hour per day, five days per week," but in full restraints. *Id.* Morgan received numerous disciplinary reports and remained in Phase I for over two years. The court granted summary judgment to the defendant where the evidence showed that Morgan could walk for exercise while outdoors in full restraints and had some ability to exercise indoors, without restraints. The facts of that case thus indicate that, despite the restraints, the plaintiff there had greater opportunity for exercise than Jones does. Regardless, Morgan was a convicted prisoner rather than a pretrial detainee, and his past conduct gave rise to legitimate security concerns on the part of prison officials.

The defendant also argues that Detention Center inmates' access to indoor exercise is sufficient to satisfy the constitutional requirement of regular exercise, notwithstanding the lack of access to regular outdoor exercise. However, Jones' evidence, if true, indicates that he and the other detainees effectively do not have the opportunity to exercise indoors in the day room, because it is overcrowded and hectic, making it nearly impossible and even dangerous to try to exercise in that environment. Under the totality of the circumstances, if the facts as alleged by the plaintiff are found to be true—that, pursuant to Detention Center policy, pretrial detainees have no real ability to exercise indoors, are offered the opportunity for outdoor exercise only irregularly and infrequently, and are required to remain shackled while outdoors—then the defendant's policy may well contravene the plaintiff's rights under the Fourteenth Amendment.

**B. Evidence of Injury**

The defendant also argues that he is entitled to summary judgment because the plaintiff failed to plead that he suffered an injury as a result of the lack of access to regular exercise and failed to offer "admissible evidence" of injury in response to the Motion for Summary Judgment. (Doc. No. 48, at 4.) The court construes this objection as an assertion that the plaintiff has not shown the existence of a material factual dispute as to whether he suffered a sufficiently serious injury to state a claim for violation of his due process rights.

Generally, for a pretrial detainee to establish a § 1983 claim for allegedly unconstitutional conditions of confinement, he must show that the challenged conditions were, "objectively, sufficiently serious" to constitute a deprivation of the right to due process. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (articulating the standard that applies to convicted prisoners); *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539, 2008 WL 2852898 (6th Cir. 2008) (applying same standard to claim by pretrial detainee). Notably, however, "to meet the objective element, the

inmate must show that the conditions, either alone or in combination, pose an *unreasonable risk* of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (emphasis added) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

In response to the defendant's Motion for Summary Judgment, the plaintiff avers under oath that, as a direct result of the defendant's policy of permitting limited exercise, he has gained over 60 pounds in the course of the year that he has been detained, had to go on blood pressure medication, and developed high cholesterol. He also states that he suffers from psychiatric conditions, including bi-polar disorder and PTSD, the symptoms of which he believes are exacerbated by lack of "regular and meaningful exercise." (Doc. No 27, at 11.) The defendant does not dispute that the plaintiff has developed these physical symptoms or that he suffers from psychiatric conditions, but he argues that the plaintiff has not offered admissible evidence from medical professionals that his physical or mental health has deteriorated *because of* a lack of exercise. (Doc. No. 48, at 5.)

The court finds that the defendant is not entitled to summary judgment on this basis either. First, the risks posed by lack of access to exercise have been accepted as self-evident by both the Sixth Circuit and the Supreme Court, and, as set forth above, an inmate must only establish that conditions of confinement pose an unreasonable "risk" of serious injury to establish this element of his claim. *Walker*, 717 F.3d at 125. The plaintiff here seeks prospective injunctive relief as well as damages. As the Supreme Court has opined: "It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

Second, in *Patterson*, the Sixth Circuit held that the district court must conduct a case-by-case analysis in order to consider an individual prisoner's situation. Among the facts to be considered are "the size of the cell, opportunity for contact with other inmates, time per day expended outside the cell, justifications for denial of the right to exercise, physical or psychological injuries resulting from a lack of exercise or a particularized need for exercise." *Patterson*, 717 F.2d at 289. In other words, under *Patterson*, "physical or psychological injury" is just one of several factors the court must consider. *Madden v. Piper*, No. 1:16-CV-P21-GNS, 2017 WL 3584216, at *3 (W.D. Ky. Aug. 18, 2017) (denying summary judgment to the defendant on the plaintiff's Eighth Amendment claim that he had been deprived of outside exercise for four months, despite his failure to allege injury).

Thus, the court is not persuaded that medical evidence of actual injury or causation is required under the circumstances of this case. Even assuming it is, the court agrees with the magistrate judge that, at this juncture, the plaintiff's own sworn allegations that he suffered actual, non-trivial, adverse consequences arising from the deprivation of exercise are sufficient to raise a genuine issue about actual injury caused by the alleged constitutional deprivation. The lack of medical evidence is not fatal to his claim at this stage. Moreover, as the magistrate judge noted, three of the pending motions filed by Jones at the time the R&R was issued were motions seeking the production of medical records or the issuance of subpoenas for his medical records. (Doc. No. 44, at 10 n.44 (referencing Doc. Nos. 32, 36, 39).)[4]

---

[4] It is unclear at this juncture whether the plaintiff has been able to obtain all of his medical records. He attached some medical records to his Response to the defendant's Objection, but he did not make any argument related to the records.

**IV.    Conclusion**

Having conducted a *de novo* review of those portions of the R&R to which the defendant objects, the court finds the defendant's Objection to be without merit. The court accepts the magistrate judge's recommendations in their entirety. The defendant's Motion for Summary Judgment will, accordingly, be granted in part and denied in part.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge